IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 19-cv-2808-WJM-MEH

DIANNA CHRISTINE MURPHY,

      Plaintiff,

v.

SCHAIBLE, RUSSO & COMPANY, C.P.A.'S L.L.P., and
THOMAS SCHAIBLE

      Defendants.

---

## ORDER RULING ON POST-TRIAL MOTIONS

---

The Court presided over a 6-day jury trial beginning on May 31, 2022. On June 1, 2022, at the close of the Dianna Christine Murphy's ("Plaintiff") case-in-chief, Thomas Schaible ("T. Schaible") moved for judgment as a matter of law on Plaintiff's breach of fiduciary duty claim pursuant to Federal Rule of Civil Procedure 50(a). (ECF No. 324). On June 6, 2022, after resting his own case, T. Schaible renewed his Rule 50(a) motion. (ECF No. 330 at 1.) The Court granted in part and denied in part T. Schaible's motion. (*Id.* at 2.)

On June 7, 2022, the jury returned a verdict in favor of Plaintiff and against T. Schaible on the remaining portion of her breach of fiduciary duty claim. (ECF No. 339.) Following trial, Plaintiff filed her Motion for Prejudgment Interest and Entry of Judgment (ECF No. 341) ("Interest Motion"), T. Schaible filed his Renewed and Opposed Motion for Judgment as a Matter of Law (ECF No. 349) ("Rule 50(b) Motion"), and T. Schaible

1

later filed his unopposed Request for Court to Rule on Pending Post-Trial Motions ("Request for Ruling") (ECF No. 367).

For the reasons below, the Rule 50(b) Motion is denied, the Interest Motion is granted as set out below, and the Request for Ruling is denied as moot.

## I. LEGAL STANDARD

Judgment as a matter of law is appropriate where "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). Stated another way, "[a] directed verdict is justified only where the proof is all one way or so overwhelmingly preponderant in favor of the movant so as to permit no other rational conclusion." *Hinds v. Gen. Motors Corp.*, 988 F.2d 1039, 1045 (10th Cir. 1993). In reviewing a Rule 50 motion, the Court must draw all reasonable inferences in favor of the nonmoving party. *Wagner v. Live Nation Motor Sports, Inc.*, 586 F.3d 1237, 1244 (10th Cir. 2009).

Where a party properly moves for judgment as a matter of law prior to the case being submitted to the jury, that party may renew the motion after the jury returns its verdict. *See* Fed. R. Civ. P. 50(b); *Atchley v. Nordam Grp.*, 180 F.3d 1143, 1147–48 (10th Cir. 1999). In resolving a Rule 50(b) motion, the Court "will not weigh evidence, judge witness credibility, or challenge the factual conclusions of the jury." *Deters v. Equifax Credit Info. Servs., Inc.*, 202 F.3d 1262, 1268 (10th Cir. 2000).

## II. ANALYSIS

### A.     Rule 50(b) Motion

The Court begins with T. Schaible's Rule 50(b) Motion, which relies entirely on

2

one fact: Plaintiff and her then-husband Michael Schaible ("M. Schaible") (T. Schaible's brother) were joint tenants of the investment account ("SSN Account") T. Schaible managed on their behalf.  (ECF No. 349 at 2.)  From this fact, two arguments flow: (1) that Plaintiff could not be legally harmed by the withdrawal of the funds at the direction of M. Schaible; and (2) that even if she were legally harmed, T. Schaible did not have a duty to notify Plaintiff that M. Schaible had directed the withdrawal prior to executing that instruction.  (*Id.*)

      1.   <u>Economic Harm</u>

After granting in part and denying in part T. Schaible's motion pursuant to Rule 50(a), the only theory of liability the Court permitted the jury to consider was the reduction in value of the SSN Account.  (ECF No. 336 at 19.)  T. Schaible argues that because this account was held by Plaintiff and M. Schaible as joint tenants (rather than tenants in common), Plaintiff could not be injured by M. Schaible's withdrawal of the funds from the SSN Account—even if he withdrew *everything*.  (*Id.*)  Because he merely facilitated M. Schaible's withdrawal of funds he was entitled to control, T. Schaible argues he legally cannot have injured Plaintiff by complying with his brother's instruction.  (*Id.* at 5.)

Plaintiff contends this argument "ignores the evidence at trial regarding [T. Schaible's] breaches of his fiduciary duties to [Plaintiff] that led up to the $2.5 [million] transfer."  (ECF No.360 at 4.)  Plaintiff reiterates that T. Schaible had fiduciary duties to both M. Schaible and Plaintiff, and she recounts evidence from the record at trial showing that T. Schaible ignored her directives and concerns while he quickly responded to his brother's instruction to withdraw funds from the SSN Account.  (*Id.* at

3

4–5.)  Those funds ultimately ended up in an account controlled solely by M. Schaible. (*Id.* at 6–7.)

T. Schaible has made this argument before (ECF No. 360 at 3), and the Court remains unconvinced that because M. Schaible had the right to all funds in the SSN Account, T. Schaible could not have injured Plaintiff by facilitating M. Schaible's withdrawal of $2.5 million from that account.  While T. Schaible repeatedly explains that M. Schaible had a legal right to all funds in the SSN Account, he seems intent on ignoring the fact that Plaintiff also had the right to those funds.  There was ample evidence in the record for the jury to reasonably conclude that when T. Schaible ignored Plaintiff's multiple concerned communications and questions about the funds in the SSN Account and then promptly assisted his brother in withdrawing millions of dollars from that same account, he injured Plaintiff.

The Court will not disturb the jury's verdict on these grounds.

2.  Fiduciary Duty

T. Schaible also argues that, even if he did cause Plaintiff economic injury, he did not breach his fiduciary duties to her.  Relying on *Zimmerman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 391 N.W.2d 353 (Mich. Ct. App. 1986), he argues fiduciaries are not "required to disregard orders from one owner of a joint account where there is a perceived conflict of interest with another."  (ECF No. 349 at 6 (quoting *Zimmerman*, 391 N.W.2d at 356).)  Because M. Schaible was also a joint tenant of the SSN Account and a client to whom T. Schaible owed fiduciary duties, T. Schaible argues he "had no common-law obligation to Plaintiff to refuse or delay action on Michael Schaible's instruction to transfer funds out of the SSN Account."  (*Id.* at 7.)

4

While Plaintiff criticizes T. Schaible for relying on *Zimmerman*, she responds to his arguments (in part) by citing her own out-of-state case law.  (ECF No. 360 at 8.)  In *Leuzinger v. Merrill Lynch, Pierce Fenner & Smith, Inc.*, 396 S.W.2d 570 (Mo. 1965) (en banc), the Missouri Supreme Court explained:

> [I]f the stockbroker knows of facts and circumstances which would lead an ordinarily careful and diligent person to believe that one joint tenant of a joint brokerage account was in the process of wrongfully converting to his own uses and purposes the interest of the other joint tenant, a duty to inform the latter would arise, and in such case the broker would be derelict in disbursing the whole account to the joint tenant under suspicion, without first informing the other and obtaining consent and approval to the disbursement.

396 S.W.2d at 576.  Plaintiff argues this is precisely the scenario that occurred with the SSN Account, and T. Schaible failed to fulfill his fiduciary duty to protect her interests.  (*See* ECF No. 360 at 8 ("Indeed, Mr. Fender's expert testimony at trial was consistent with the principles articulated in *Leuzinger*.").)

Ultimately, the Court is satisfied that the record at trial was sufficient for the jury to conclude that T. Schaible breached his fiduciary duties to Plaintiff.  Because T. Schaible was a fiduciary, he owed several duties to Plaintiff.  Among these duties is a duty of loyalty. *See Paine, Webber, Jackson & Curtis, Inc. v. Adams*, 718 P.2d 508, 514 n.6 (Colo. 1986) (en banc).  As discussed above, the trial record showed that T. Schaible was aware that Plaintiff was wary of what M. Schaible may do with the funds in the SSN Account and wanted to protect those funds from rash decisions by M. Schaible.  (ECF No. 360 at 4.)  He was further aware that Plaintiff was interested in potentially dividing the funds in the account because she sought his advice on this matter.  (*Id.*)  The evidence showed these communications were ignored.  (*Id.*)  Despite surely knowing that withdrawing $2.5 million dollars from the SSN Account was not in Plaintiff's interest, T. Schaible promptly responded

5

to and carried out M. Schaible's request to do just that.  (*Id.* at 4–5.)  There is nothing legally insufficient about the jury's evident conclusion that T. Schaible's personal loyalty to his brother over his then-sister-in-law was a violation of his legal and professional duty of loyalty to Plaintiff as an equal client.

Therefore, the Court will not disturb the jury's verdict on these grounds either, and the Rule 50(b) Motion is denied.

## B.     Interest Motion

The Court next addresses the parties' competing views on how to calculate prejudgment interest on the jury's verdict.  There is no dispute that Plaintiff is entitled to interest under C.R.S. § 13-21-101(1); the only dispute is over the amount.  (*See* ECF Nos. 341, 342, 346.)

Plaintiff contends pre-judgment interest should be calculated in two stages.  First, simple interest should accrue at 9% per annum on the $600,000 verdict from March 31, 2017 (the date she contends her cause of action accrued) through September 30, 2019 (the date prior to filing).  (ECF No. 346 at 6.)  This results in $135,073.97 of accrued pre-filing interest.  (*Id.*)  Second, annually compounding interest should accrue at 9% per annum on the sum of the judgment and pre-filing interest.  (*Id.* at 5–6 (citing *Xiong v. Knight Transportation, Inc.*, 77 F. Supp.3d 1016, 1024 (D. Colo. 2014).)  This results in $138, 267.42 of accrued post-filing interest.  (*See id.* at 7.)

T. Schaible agrees with these two basic steps but disagrees on the particulars. (ECF No. 342 at 3.)  First, he contends that if any action accrued at all, it did so no earlier than January 31, 2019, the date on which the family court handling Plaintiff and M. Schaible's divorce proceedings declared the SSN Account Plaintiff's sole property.

(*Id.* at 3.)  Second, he argues post-filing interest should not accrue on pre-filing interest. (*Id.* at 7.)

With respect to post-judgment interest, Plaintiff seeks interest accruing at 9% from the date judgment is entered to the date it is satisfied.  (ECF No. 341 at 3.)  T. Schaible argues "Plaintiff's request for a judgment providing [for] . . . interest [accruing] at 9% per annum following judgment fails to account for the adjustment that must be made to the rate of post-judgment interest if Defendant Schaible files an appeal."  (ECF No. 342 at 8.)  He filed a notice of appeal on December 2, 2022.  (ECF No.350.)

T. Schaible's argument regarding the date of accrual is entirely based upon the fact that the SSN Account was held in joint tenancy until the family court divided Plaintiff and M. Schaible's marital assets.  (ECF No. 342 at 3–7.)  As the Court has already explained, just because Plaintiff did not have sole right to the assets in the SSN Account until 2019 does not mean that she was not injured when $2.5 million dollars were withdrawn.  *See supra*, Part II.A.1.  The Court finds Plaintiff's cause of action accrued on March 31, 2017, the date M. Schaible requested the transfer that T. Schaible ultimately carried out.  (ECF No. 360 at 5.)

As for T. Schaible's second argument that "[t]here is no provision of the statute providing" for "interest on interest," the Court directs him to the third sentence of C.R.S. § 13-21-101(1).  That sentence reads: "On actions filed on or after July 1, 1979, the calculation must include compounding of interest annually from the date the suit was filed."  C.R.S. § 13-21-101(1).  This sentence provides for compounding "of interest" not compounding "of *some* interest" or "interest accrued after filing.  *Id.*; *see also Xiong*, 77 F. Supp.3d at 1024 (awarding post-filing interest on accrued pre-filing interest).  And

7

while the provision does contain the prepositional phrase "from the date the suit was filed," this phrase is best read as modifying "annually"—that is, it fixes the date at which interest compounds as every anniversary of the date of filing.  Therefore, the Court uses Plaintiff's interest calculation method for post-filing interest.

With respect to T. Schaible's argument that his future appeal will affect the calculation of post-judgment interest, the Court notes that his appeal is no longer hypothetical.  (*See* ECF No. 350.)  Therefore, the Court will order post-judgment interest based on C.R.S. § 13-21-101(4).

    1.    <u>Interest Calculation</u>

The Court awards pre-judgment interest as set out below:

| Date Range | Pre-Filing Interest |
|---|---|
| March 31, 2017–March 30, 2018 | $54,000[1] |
| March 31, 2018–March 30, 2019 | $54,000 |
| March 31, 2019–September 30, 2019 | $27,073.97[2] |
|  | **Total:** $135,073.97 |

| Date Range | Post-Filing Interest |
|---|---|
| October 1, 2019–September 30, 2020 | $66,156.66[3] |

---

[1] $600,000 * 0.09 = $54,000.

[2] (183 / 365) * $54,000 = $27,073.97.

[3] ($600,000 + $135,073.97) * 0.09 = $66,156.66

| October 1, 2020–September 30, 2021 | $72,110.76[4] |
| October 1, 2021–September 30, 2022 | $78,600.73[5] |
| October 1, 2022–June 27, 2023 | $63,141.14[6] |
| | **Total:** $280,009.29 |

Therefore, the total judgment value in this action is $1,015,083.26, representing the jury's $600,000 verdict, $135,073.97 in pre-filing interest, and $280,009.29 in post-filing interest.

Post-judgment interest will be calculated from June 28, 2023, through the date T. Schaible satisfies the judgment pursuant to C.R.S. § 13-21-101(4) at the rate set by the Colorado Secretary of State under C.R.S. § 13-21-101(3).

### III. CONCLUSION

For the reasons set forth above, the Court ORDERS:

1. T. Schaible's Renewed and Opposed Motion for Judgment as a Matter of Law (ECF No. 349) is DENIED;

2. Plaintiff's Motion for Prejudgment Interest and Entry of Judgment (ECF No. 341) is GRANTED as set out above;

3. T. Schaible's Request for Court to Rule on Pending Post-Trial Motions

---

[4] ($600,000 + $135,073.97 + $66,156.66) * 0.09 = $72,110.76
[5] ($600,000 + $135,073.97 + $66,156.66 + $72,110.76) * 0.09 = $78,600.73
[6] ($600,000 + $135,073.97 + $66,156.66 + $72,110.76 + $78,600.73) * 0.09 = $85,674.79.  (269 / 365) * $85,674.79 = $63,141.14.

(ECF No. 367) is DENIED AS MOOT;

4.      The Clerk shall enter judgment in favor of Plaintiff and against T. Schaible,

which shall provide for post-judgment interest to be calculated pursuant to

C.R.S. §§ 13-21-101(3) and (4);

5.      Plaintiff shall have her costs, if any, upon compliance with

D.C.COLO.LCivR 54.1; and

6.      The Clerk shall terminate this action.

Dated this 28th day of June, 2023.

BY THE COURT:

_____
William J. Martínez
Senior United States District Judge