**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 19-cv-2808-WJM-MEH

DIANNA CHRISTINE MURPHY,

    Plaintiff,

v.

SCHAIBLE, RUSSO & COMPANY, L.L.P., and
THOMAS SCHAIBLE,

    Defendants.

---

## ORDER AWARDING ATTORNEYS' FEES

---

The undersigned presided over a 6-day jury trial, concluding on June 7, 2022. The jury returned a verdict awarding Plaintiff Dianne Christine Murphy ("Murphy") $600,000 in economic damages against Defendant Thomas Schaible ("Schaible"). (ECF No. 387.) Now before the Court is Murphy's Motion for an Award of Attorney's Fees and Costs ("Motion"), in which she seeks $798,627.75 in fees and $40,051.80 in costs. (ECF No. 380.) Schaible filed a response in opposition to the award of any fees or costs, and Murphy filed a reply in support. (ECF Nos. 390, 398.)

For the reasons set forth below, the Motion is granted in part and denied in part.

## ANALYSIS

### A. Availability of an Award of Attorneys' Fees

Murphy asks the Court to award fees and costs based on an exception to the "American rule" that parties bear their own litigation costs. This exception was first recognized by the Colorado Court of Appeals in *Heller v. First Nat'l Bank of Denver,*

*N.A.*, 657 P.2d 992 (Colo. App. 1982), and adopted by the Colorado Supreme Court[1] in *Buder v. Sartore*, 774 P.2d 1383 (Colo. 1989).  While the parties agree that such an exception exists under Colorado law, they disagree on its scope; and more specifically, they disagree on whether this action is properly within that scope.  (*Compare* ECF No. 380 at 3–4, *with* ECF No. 390 at 3–6.)

Schaible argues for several key limitations on the recognized exception that would result in this action being inappropriate for an award of attorneys' fees.  First, he leans *heavily* on the initial articulation of the exception as being one for breach of trust—that is, a breach of fiduciary duty by a trustee owed to the beneficiary of the trust.  (*See* ECF No. 390 at 3–5.)  This emphasis implies that the exception may be inapplicable where in fact no formal or constructive trust exists.  Second, in the final portion of his argument on this point, he admits that breaches of fiduciary relationships other than trustee–beneficiary can meet the exception's requirements; though he asks the Court to recognize a different limitation on the exception.  (*Id.* at 5–6.)  In Schaible's view, the only other circumstance in which the exception may apply is "where the custodian for a restricted account violated a statutory standard of care or a court order."[2]  (ECF No. 390

---

[1] "The right to recover attorneys' fees is substantive and therefore determined by state law in diversity cases."  *Pub. Serv. Co. of Colo. v. Cont'l Cas. Co.*, 26 F.3d 1508, 1520 (10th Cir. 1994) (applying Colorado law to breach-of-trust exception).

[2] Schaible also argues that *Heller* requires Murphy to prove her fees and costs at trial. (ECF No. 390 at 9–10.)  This statement is nonsense, bordering on disingenuous, and is not in the slightest supported by *Heller*.  The "limited [breach-of-trust] exception is equitable in nature," and therefore cannot be awarded by a jury.  *Delluomo*, 328 P.2d at 294 (quoting *Stevens v. Moore & Co. Realtor*, 874 P.2d 495, 497–98 (Colo. App. 1994)).  In *Heller*, the attorneys' fees were awarded *by the trial court*.  657 P.2d at 999.  This procedure was approved by the Court of Appeals, which affirmed the award of fees and awarded additional fees relating to the appeal.  *Id.* at 1000.

The Court is dismayed by Schaible's argument on this point because it is more than simply wrong: it borders on deceptive.  His response brief includes the following quote from

at 6.)

The Court reads those cases somewhat differently. No Colorado appellate court cited by the parties or reviewed by the Court following its own research provides an exclusive list of relationships that can give rise to a breach of fiduciary duty subject to the exception to the American rule. Rather, as one Division of the Colorado Court of Appeals observed: When an action is "not a breach of trust action . . . [a court] must determine whether plaintiff['s] breach of fiduciary duty action [i]s sufficiently analogous to a breach of trust action to come within the scope of the breach of trust exception." *In re Delluomo v. Cedarblade*, 328 P.3d 291, 296 (Colo. App. 2014).

In *Delluomo*, the defendant was the plaintiff's niece and one of the beneficiaries of a revocable trust he established. *Id.* at 292. When the defendant leveraged undue influence upon the plaintiff to convince him to make "several . . . changes . . . to [his] financial affairs," the court appointed a guardian ad litem, who sued on his behalf to

---

*Heller* three times: the award of fees "must be supported by evidence adduced at trial." (ECF No. 390 at 6, 10.) Though he uses this language to argue *Heller* "require[s] [Murphy] to prove [fees and costs as] damages at trial," it is merely the first clause of a longer, critical sentence. (*Id.* at 10.) When read in full, it is clear the sentence Schaible quotes forecloses his argument that the Court cannot entertain the Motion:

> The award must be supported by evidence adduced at trial, and "the *trial court* may consider, among other factors, the amount in controversy, the length of time required to represent the client effectively, the complexity of the case, the value of the legal services to the client, and the usage in the legal community concerning fees in similar cases."

567 P.2d at 999–1000 (quoting *Hartman v. Freedman*, 591 P.2d 1318, 1322 (Colo. 1979)) (emphasis added). The Court is skeptical that Schaible's counsel was unaware that the out-of-context quotation of *Heller* might be misleading. Nevertheless, the Court very generously gives counsel the benefit of the doubt that they did not intend to mislead the Court; rather, counsel simply failed to finish reading even the very *sentence* quoted multiple times in Schaible's response brief.

unwind those changes.  *Id.* at 293.  The jury found that the defendant had a fiduciary duty to the plaintiff "arising out of a confidential relationship, and that she had breached her fiduciary duty."  *Id.*  The Colorado Court of Appeals held that "the scope of the exception . . . encompass[es] breach of trust actions or breach of fiduciary duty actions that are closely analogous to breach of trust actions."  *Id.* at 296.  To the Court's mind, this is a qualitative, nuanced standard, and far from a bright-line rule.

In applying this standard, the court in *Delluomo* held that the defendant's breach of duty did not closely resemble a breach of trust.  *Id.*  "A trustee's duty springs from the underlying legal agreement to manage property and is bounded by the scope of that relationship; in contrast, the duty of a confidential relation arises from superiority and influence, is borne by the individual, is not expressly agreed upon, and involves property only incidentally."  *Id.* (citing *Moses v. Diocese of Colo.*, 863 P.2d 310, 321–22 (Colo. 1993)).  Though the court noted that defendant "was not a trustee or custodian," this was merely a more specific way of stating the general observation that she "did not have a duty to manage the funds for a beneficiary who was ultimately injured by her breach."  *Id.* at 297.

Applying the relevant standard to the case at bar, the Court concludes that this is an appropriate action to apply the breach-of-trust exception.  Though Schaible's personal relationship with Murphy was at one time familial, his fiduciary duty to her arose from a legal agreement, which he cites in his response.  (ECF No. 390 at 2–3.)  That agreement, which was admitted at trial as Plaintiff's Exhibit 4, is a contract for "Investment Management of Assets."  (ECF No. 145-2 at 3 (a copy of the agreement admitted at trial filed during summary judgment briefing).)  While Murphy's claim likely

4

lies toward the outer limit of the exception, the Court sees no material difference between Schaible's fiduciary duty and a trustee's duty as described by *Delluomo*.

Indeed, Schaible's duty: (1) arose from a legal agreement (2) to manage Murphy's investment assets (3) in a way that was bounded by the scope of *that relationship*, not their personal relationship to each other or Michael Schaible, Schaible's brother and Murphy's ex-husband. That Schaible was not the custodian of Murphy's assets and could not make independent investment decisions does not change the result. Schaible mismanaged Murphy's funds when he assisted his brother in taking them outside his then-wife's reach in anticipation of the dissolution of their marriage, "ultimately injur[ing]" Murphy. *Delluomo*, 328 P.3d at 297.

**B.    Appropriate Fee**

Any fee award must be reasonable under the circumstances. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.*; *accord Am. Water Case Dev., Inc. v. City of Alamosa*, 874 P.2d 352, 386 (Colo. 1994) (citing *id.*). This is commonly referred to as the "lodestar method" for calculating fees. *Hensley*, 461 U.S. at 433. Once the Court determines the lodestar, it may "adjust the lodestar upward or downward to account for the particularities" of the work performed. *Phelps v. Hamilton*, 120 F.3d 1126, 1131 (10th Cir. 1997). The Court is not required to reach a lodestar determination in every instance, however, and may simply accept or reduce a fee request within its discretion. *Hensley*, 461 U.S. at 436–37.

As for the hourly rate, the Tenth Circuit has indicated that "the court must look to

'what the evidence shows the market commands.'" *Burch v. La Petite Academy, Inc.*, 10 F. App'x 753, 755 (10th Cir. 2001) (quoting *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1255 (10th Cir. 1998)).  The burden is on the party seeking fees to provide evidence of the prevailing market rate for similar services by "lawyers of reasonably comparable skill, experience, and reputation" in the relevant community.  *Ellis v Univ. of Kan.*, 163 F.3d 1186, 1203 (10th Cir. 1998).  "If the district court does not have adequate evidence of prevailing market rates for attorney fees, then it may, in its discretion, use other relevant factors, including its own knowledge, to establish the rate." *Lippoldt v. Cole*, 468 F.3d 1204, 1225 (10th Cir. 2006).

The party requesting fees has the burden to "prove and establish the reasonableness of each dollar, each hour, above zero," and bears the burden of providing the required documentation and demonstrating that the fees requested are reasonable.  *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1201 (10th Cir. 1986).

The best evidence of reasonable fees is "meticulous time records that 'reveal . . . all hours for which compensation is requested and how those hours were allotted to specific tasks.'" *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995) (quoting *Ramos v. Lamm*, 713 F.2d 546, 553 (10th Cir. 1983)).  To determine the number of hours expended, the Court reviews counsel's billing entries to ensure that counsel exercised proper billing judgment.  *Case*, 157 F.3d at 1250.  The party seeking fees must make a "good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434.  Where such an effort appears "inadequate, the district court may reduce the award accordingly." *Id.* at 433; *Jane L.*, 61 F.3d at 1510.

Moreover, when a plaintiff "is deemed 'prevailing' even though he succeeded on only some of his claims for relief," a court may exclude a portion of the fee if claims on which plaintiff lost were "unrelated to the claims on which he succeeded." *Hensley*, 461 U.S. at 434. A court may also reduce the overall award if a party "has achieved only partial or limited success." *Id.* at 436.

1. <u>Counsel's Hourly Rates</u>

Plaintiff requests hourly rates ranging from $500 to $875 per hour for work performed by partners, $250 to $535 per hour for work performed by associates, and $270 to $310 per hour for work performed by paralegals. (ECF No. 380-1 at 3–5.) Plaintiff argues that the hourly rates above are reasonable because they "fall squarely within—and often below—those approved by other Colorado courts." (ECF No. 380 at 11–12.) For support, she cites a number of cases in which attorneys with similar hourly rates were approved—though none of the cited cases had rates as high as the $875 dollars charged by Benjamin Pergament, a Baker & Hostetler LLP partner. (*See id.*)

In response, Schaible argues that Murphy "does not, by affidavit or otherwise, provide evidence that the hourly rates charged by the 10 lawyers and two non-lawyer timekeepers in this matter reflect the prevailing market rate for the services provided to Plaintiff." (ECF No. 390 at 13.) The Court agrees to an extent.

After carefully considering the parties' arguments, supporting documentation, and applicable case law, and taking stock of its own knowledge of the prevailing market rate for legal services acquired from being a litigator or judge in the Denver metro area for 35+ years, the Court concludes that Murphy's requested hourly billing rates are somewhat high compared to the rates civil litigation attorneys of similar skill and

7

experience in the Denver area that are substantiated in the Motion.  Moreover, the rates billed for the two paralegals who worked on this matter are exceptionally high.

Of the three cases Murphy cites to support the desired rates, two are intellectual property cases, which in the undersigned's experience are generally far more legally complex than the instant matter; and in the third, the court only approved rates as high as $700 per hour.  (*See* ECF No. 380 at 11–12.)   Beyond that, Plaintiff failed to cite to any bar association hourly rate survey, or buttress her fee request with any declaration from an experienced federal court litigator attesting to the reasonableness of the hourly rates sought or time expended by Plaintiff's legal team.  While neither of these sources of support are required in all cases, a careful practitioner would typically have included one or both of these arrows in his or her fee request quiver.

Therefore, with regard to the supporting documentation Plaintiff has elected to provide to the Court, any hourly rate over $750 for attorneys, and any hourly rate in excess of $230-240 for paralegals, will be critically taken into account in assessing the appropriate fee.

2. Billed Hours

Murphy explains that her counsel billed approximately 2,075 hours on this action, including the trial held before the undersigned, for a total fee of approximately $1,064,837.  (*Id.* at 6.)  Further, her counsel estimates that about 75% of the time billed was devoted to the successful claim against Schaible.  (*Id.*)  Excluding 25% of total time and billing, she calculates the fees for her claim against Schaible as $798,627.75 for 1,556.25 hours of work.  (*Id.* at 7.)

She argues this substantial time was necessary to properly represent her

interests because: (1) more than $3 million in damages were in dispute; (2) this action was hard-fought and connected to her complex, multi-national divorce proceedings; (3) her claim against Schaible was complex, involved numerous pre-trial motions and extensive discovery; and (4) her lawyers' services provided substantial value in recovering more than half a million dollars from Schaible.

Schaible, in addition to requesting an evidentiary hearing, argues the billed hours are unreasonable on two grounds.  (ECF No. 390 at 10–14.)  First, he cites several examples of Murphy's lawyers' "block billing," which the Court agrees are inappropriate.  (*Id.* at 11–12.)  A lawyer's bill should not only explain what tasks were completed and how long he or she worked on a client's matter—they should explain how long he or she worked on *each task* so that the client (or the Court) may conclude whether a reasonable amount of time was spent on the billed-for tasks.  Otherwise, it is impossible to discern whether the lawyer exhibited the requisite "billing judgment" in the course of submitting his or her attorney fee request.  *See Case*, 157 F.3d at 1250.  Second, Schaible questions the accuracy of Murphy's counsel's estimate that approximately 75% of billed time was spent on the claim against him.  (ECF No. 390 at 13–14.)

After carefully considering the parties' briefs and the arguments herein, the Court concludes: (1) an evidentiary hearing is not necessary; (2) Murphy's counsel's bills are replete[3] with improper block billing; and (3) the estimate of 75% of total billable time

---

[3] The bills submitted by Murphy are quite literally the worst example of block billing the undersigned has ever seen in his legal or judicial career.  The Court has not reviewed every page of these bills, but in the approximately 75 pages of bills it has reviewed, there is not *a single entry* that specifies how much time a biller spent on individual tasks on days in which he or she worked on more than one.

For example, on May 23, 2022, Cory M. Curtis billed $4,000 for eight hours of work on six discrete tasks, and the Court has no idea how much time he spent on *any* of them based on

being dedicated to Schaible is plausible. Given these findings, and the finding in the previous section that certain rates are excessive, the Court will further reduce the fees payable to Murphy. Rather than the 75% of billed time she requests, the Court will award her 55% of her fee total, or $585,660.35.

        3.      <u>Costs</u>

Murphy requests reimbursement for $40,051.80 in costs independent of her counsel's legal fees, including for travel, lodging, and meals for trial, the scheduling conference, and depositions in Los Cabos, Mexico and Denver, Colorado; mediation fees; expert fees; and electronic legal research fees. (ECF No. 380 at 12–13.) In addition to a summary of these costs included in the Motion, Murphy attaches itemized records of these expenses. (ECF No. 380-1 at 253–266.) Strangely, in her reply, she reduces her request to $39,747.33. (ECF No. 398 at 8.) The Court presumes the Motion contains a mistake and uses the corrected sum from the reply.

Schaible does not contest the reasonableness of any of these expenses other than to "request[] the opportunity to challenge the 25% proposed reduction with opinion testimony from an expert" as he does with respect to the fees. (ECF No. 390 at 13.) Using this approach, however, Schaible unwisely made the tactical decision to allow Murphy's request for an award of litigation costs to go wholly uncontested and unopposed in the event the Court decided not to hold a hearing on the instant Motion.

As referenced previously, the Court has elected to exercise its discretion to not

---

his billing entry. (ECF No. 380-1 at 228.) The Court questions why Murphy paid these bills without knowing what she was getting for her money, and it highly doubts any General Counsel for a sophisticated business client would pay any of these bills without a major discount, more detailed entries, and/or a prior agreement to receive vague, aggregated invoices for legal services rendered.

10

hold an evidentiary hearing on the Motion, finding the present record sufficiently developed to permit a ruling on the Motion without such a hearing.

The end result is that Schaible has effectively confessed that portion of the Motion in which Murphy seeks her litigation costs in this case. The Court will therefore award Murphy the full amount of her litigation costs reasonably incurred in this action, that being $40,051.80.

## CONCLUSION

For the reasons set forth above, the Court ORDERS that Murphy's Motion for an Award of Attorney's Fees and Costs (ECF No. 380) is GRANTED IN PART and DENIED IN PART as set forth above. Murphy is awarded **$585,660.35** in attorney's fees and **$40,051.80** in litigation costs reasonably incurred in this action.

Dated this 21st day of March, 2024.

BY THE COURT:

_____
William J. Martinez
Senior United States District Judge